# Richmond

GRACE ELOISE LOVE v. LYNCHBURG NATIONAL BANK AND TRUST
COMPANY OF LYNCHBURG, EXECUTOR, ETC., ET AL.

March 8, 1965.

Record No. 5875.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*John Joseph Baecher*, for the appellant.

*Douglas A. Robertson* (*Williams, Robertson & Sackett*, on brief), for the appellees.

SPRATLEY, J., delivered the opinion of the court.

■ The principal and controlling question in this case is whether §§ 55-154 and 55-155 of the Code of Virginia [Repl. Vol. 1959], are constitutional and valid.

John M. Love, Jr. and Leroy R. Love by their deed dated August 22, 1905, conveyed to W. F. Amonette and Fannie J. Amonette 78 acres of land in Elon District, Campbell County, Virginia, subject to the following reservation:

"All minerals and mineral rights in, under and upon said land, including the right to prospect for, dig, mine, bore, or quarry, for any and all minerals and mineral substances, or stones on said land, and to remove and sell the same, with the full right for these purposes of free and unimpeded ingress, egress and regress for themselves, their heirs and assigns, agents and servants, to and from any and all parts of said land, and with all rights, privileges, easements and appurtenances necessary or convenient for the full enjoyment and exercise of the foregoing rights and privileges."

The successors in title to the Amonettes, by deed dated July 5, 1945, conveyed 69 acres of the above land to John C. Jones. The conveyance was made expressly subject to the reservation contained in the August 22, 1925, deed from the Loves to the Amonettes.

John C. Jones died testate December 9, 1957, and devised the residue of his property, which included the above 69 acres, to the National Bank and Trust Company of Lynchburg, appellee, the executor and trustee of his estate.

John M. Love, Jr. died testate in 1952, and devised all of his property, which included a one-half undivided interest in the aforementioned mineral rights, to his wife, Grace Eloise Love, the appellant.

Leroy R. Love died testate in 1924, and devised all of his property, which included the remaining one-half undivided interest in the said mineral rights, to his wife, Frances Cooper Love.

Lynchburg National Bank and Trust Company, as executor of the estate of John C. Jones, instituted this proceeding on February 7, 1963, by filing its petition seeking the release of any claim to minerals or mineral rights in its land by virtue of the reservation in

the deed from the Loves to the Amonettes. (Code, §§ 55-154 and 55-155). Grace Eloise Love, Frances Cooper Love, and the unknown heirs or distributees of Frances Cooper Love, if she be dead, were made parties defendant. The petition recited the facts of record hereinabove stated; and further alleged existence of specific facts and circumstances, those listed in Code, §§ 55-154 and 55-155, as warranting the relief prayed for. It prayed the court to (1) "allow a period of not less than 6 months from the time the cause is docketed and set for hearing to elapse within which time the defendants may explore and discover commercial minerals, * * * or subsurface substances, if any;" that (2) "in the absence of satisfactory evidence to the contrary," the court declare there are no such minerals or subsurface substances in or on the land; and (3) "enter a decree declaring said claim or right to be a cloud" on its title, and releasing the land therefrom.

Process was issued and an order of publication was executed. Grace Eloise Love filed a demurrer, an answer and her grounds of defense. In her answer she claimed an existing vested interest in one-half of the minerals and mineral rights reserved in said land, as a devise of her husband. A guardian *ad litem* was appointed for the unknown parties and infants, if any, and filed his answer as such. None of the defendants except Grace Eloise Love appeared in the proceeding. The demurrer was overruled. The case came on to be heard on the pleadings and the evidence of four witnesses, taken *ore tenus*, on behalf of the appellee, the Bank, in the presence of the guardian *ad litem*.

Prior to the hearing of the evidence, the court overruled a motion by Grace Eloise Love to dismiss the petition because it sought to divest her of her interest in the said property without consideration and contrary to due process of law. Appellant excepted.

The following evidence, in narrative form, was presented on behalf of appellee:

Robert Amonette, born in 1892, son of W. F. and Fannie J. Amonette, testified that he lived on the property in question from 1905, the year it was purchased by his parents, until 1918; that he had visited and observed it to the date of the trial of this case; that "there had been no mining or prospecting" on it; and that "the land contains no sand, slate or gravel but there is rock and stone on it as normal on farms in the area," but "no soil suitable for fire-brick."

Kiah T. Ford, born in 1881, real estate dealer in Lynchburg, said that he had known the property since 1903, that he neither observed,

nor ever heard of, any mining or prospecting on it during all of that time; that there was no evidence of any mining; and no useable subsurface substance was on or under it.

Robert Boyer testified that he had been in possession of the property under a contract of sale since November 1, 1962, that there was no evidence of any mining or prospecting on it, but that there is some rock and stone but none of commercial value.

Douglas A. Robertson, an attorney at law, testified that the title of the Loves and their successors in title had been examined; that the title records do not reveal, for a period in excess of thirty-five years prior to the institution of this suit, that any mining or prospecting had been done on the property; that no taxes had been assessed on any mineral claim thereto; but that all taxes on the land had been assessed in the names of the owners of the surface for the period of thirty-five years.

The court entered a final decree in which after declaring the "evidence fully supports the allegations of the petition," recited that: (1) it had been shown, as required by Code, §§ 55-154 and 55-155, that the claim of appellant to minerals and mineral rights in, on, or under, the said land "is devised or reserved by a writing made more than 35 years prior to the institution" of this proceeding; (2) that "the right to explore or mine the land has not for a like period been exercised," nor have the defendants been charged with taxes thereon, but "all taxes on the land had been charged to and paid by the persons holding the legal title to the land;" (3) that "for a like period no deed of bargain and sale of such claim, or of the reservation of mineral rights in the lands, has been recorded in the clerk's office of" the county wherein the lands are located; (4) that "the claim or right to explore and mine and right of mining or boring has been abandoned for a like period;" (5) that "the parties defendant to this proceeding are the persons who are the successors in title to the persons by whom such claim or right was derived or reserved, by name so far as known, and as defendants unknown, so far as such successors in title are unknown;" (6) that "a period of not less than six months from the time that this cause was docketed and set for hearing had elapsed within which time the defendants might have explored and discovered commercial minerals, coal, oils, ores, or subsurface substances, if any, and no exploration had been conducted, nor any such discovery made." Thereupon, the court declared the claim or right reserved by Leroy R. Love and John M. Love, Jr., in the deed dated August 22, 1905, to be a cloud on the title of appellee,

and decreed that the 69 acres of land owned by appellee, successor in title to Leroy R. Love and John M. Love, Jr. be released from the claim of defendants to minerals or mineral rights in or on said land, and said claim or right be forever extinguished.

There being no conflict in the evidence, we are concerned only with questions of law.

Code, §§ 55-154 and 55-155 had their origin in an Act of the General Assembly of 1924, Acts 1924, Chapter 472, page 719. Subsequently, the Act was amended a number of times resulting in the presently numbered Code sections. The Act is a procedural statute of a remedial nature. It provides a rule of evidence for setting at rest titles to land when its value is reduced because of a reservation of non-existent values therein. It is a statute of repose and limitation, founded upon a rule of convenience, policy and regard for the security of property. If the facts and circumstances establish the non-existence of anything of value, it takes nothing from anyone. If there be any minerals or mineral substances of value actually in or on the land, the statute clearly implies that a court may not find to the contrary. Obviously, if there are no minerals, there can be no mineral rights. As the late Mr. Chief Justice Holt would say: "A right or claim to nothing of value is as unsubstantial as a Barmecide feast."

No legislative act may be declared unconstitutional except when it is clearly and plainly so. The legislature has a right to enact particular rules of evidence, to establish rights, and to justify the extinguishment of rights. Here, the meaning of the Act is clear, and any doubt of its constitutionality must be resolved in favor of its validity. It gives full opportunity to a claimant to show that his claim or right relates to something of substance. It gives him a period of not less than 6 months after a proceeding to extinguish his claim has been docketed or set for hearing, in which to establish that there are, in fact, commercial minerals and subsurface substances on said land. The Act was not intended to destroy or impair any ownership in existing property. It does provide that when it has been shown that a claim to minerals and mineral rights reserved in a writing, made 35 years or more prior to the hearing of a suit to extinguish such claim, has not been exercised, under the facts and circumstances prescribed by Code, §§ 55-154 and 55-155, and shown in evidence here, it shall be "*prima facie* presumed that no minerals, coals, oils, ores or subsurface substances exist in, on or under such land."

There is no merit in the suggestion that the legislation is

"special, local, private, and, therefore, arbitrary in its classification and operation." Appellant has presented no evidence or authority to justify the suggestion. The legislation is general and impartial in its operation on all persons and lands similarly situated.

In 17 Mich. Jur., Statutes, § 16, page 258, this is said:

"The fact that a law applies only to certain territorial districts does not render it unconstitutional, provided it applies to all districts and all persons who are similarly situated, and to all parts of the state where like conditions exist. Laws may be made to apply to a class only, and that class may be, in point of fact, a small one, provided the classification be reasonable and not arbitrary, and the law be made to apply to all of the persons belonging to the class without distinction. The number of inhabitants of a county is a basis for a valid classification. The needs of a thickly settled community, especially where that community lies adjacent to a large city, are quite different from those existing in a sparsely settled neighborhood. The necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived that would sustain it, that state of facts at the time the law was enacted must be assumed."

The contention that appellant was "without power and authority as executor and trustee" to institute this proceeding requires no discussion. As a fiduciary having the right to protect the property and the right to sell and convey the land, it had the right and duty to ask that the title thereto be placed in the most favorable situation to be sold.

This case is one of first impression in Virginia. There are few from other jurisdictions.

In *Wilson, Adm'x* v. *Iseminger* (1902) 185 U. S. 55, 22 S. Ct. 573, 46 L. ed. 804, 807, dealing with a Pennsylvania statute prescribing requirements for the release or extinguishment of ground rents under certain circumstances, the court said:

"The theory of this remedial act is that upon which all statutes of limitation are based,—a presumption that, after a long lapse of time, without assertion, a claim, either for money or for an interest in land, is presumed to have been paid or released. This is a rule of convenience and policy, the result of a necessary regard to the peace and security of society.

"Bonds, even when secured by mortgages upon land, mortgages themselves, merchant's accounts, legacies, judgments, promissory notes, and all evidences of debt, have universally been treated as law-

fully within the reach of legislative power exercised by the passage of statutes of limitation. Such statutes, like those forbidding perpetuities and the statute of frauds, do not in one sense, destroy the obligation of contracts as between the parties thereto, but they remove the remedies which otherwise would be furnished by the courts."

The court then quoted from Cooley's Const. Lim. 5th Ed., Section 448, as follows:

"Notwithstanding the protection which the law gives to vested rights, it is possible for a party to debar himself of the right to assert the same in the courts for his own negligence or laches. If one who is dispossessed be negligent for a long and unreasonable time, the law refuses afterwards to lend him any assistance to recover the possession merely, both to punish his neglect, * * * and also because it is presumed that the supposed wrongdoer has in such a length of time procured a legal title, otherwise he would sooner have been sued. Statutes of limitation are passed which fix upon a reasonable time within which a party is permitted to bring suit for the recovery of his rights, and which, on failure to do so, establish a legal presumption against him that he has no rights in the premises. Such a statute is a statute of repose. Every government is under obligation to its citizens to afford them all needful legal remedies; but it is not bound to keep its courts open indefinitely for one who neglects or refuses to apply for redress until it may fairly be presumed that the means by which the other party might disprove his claim are lost in the lapse of time."

Cf. also *Chartiers Block Coal Company* v. *Mellon,* (1893) 152 Pa. 286, 25 A. 597, 18 L. R. A. 702, in which the right of a surface owner to utilize the "worked out" portion of an underlying coal vein, owned by another, by drilling for oil beneath the coal vein, was upheld, the court declaring that: "When the coal is all removed, the estate ends, for the plain reason that the subject of it has been carried away."

We agree with the trial court that the evidence shows that neither appellant nor her co-defendants have been divested of any property rights; that they have no claim or right of substance, but only an unrealistic claim which constitutes a cloud on the title of the surface owner; and that the latter is entitled to the relief prayed for. The procedure to obtain that relief was strictly followed, and the facts justified the holding of the court. The decree appealed from is, therefore, affirmed.

*Affirmed.*