BENDERSON DEVELOPMENT COMPANY, INC., ET AL.

V.

PAUL A. SCIORTINO, ETC.

Record No. 850938

September 23, 1988

Present: All the Justices

138

*I. Michael Greenberger (Becky Powhatan; Scott R. McIntosh; Shea & Gardner; Willcox & Savage, P.C.*, on briefs), for appellants.

*Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

*Amicus Curiae:* International Council of Shopping Centers (Edward C. Maeder; John R. Keys, Jr.; Winston & Strawn, on brief), for appellants.

Retail Merchants Association of Tidewater, Virginia, Inc. (David F. Peters; Mary Jo Leugers; Hunton & Williams, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This appeal challenges Virginia's Sunday-closing laws. The challenge is based upon the prohibitions against "special laws" contained in the Constitution of Virginia. Eight corporations doing business in Virginia Beach (six retail merchants and two real estate development companies operating shopping centers) (the plaintiffs),[1] filed a motion for declaratory judgment in the circuit court. They alleged that they are compelled to close their retail stores in the City of Virginia Beach every Sunday due to the Sunday-closing laws, with which they comply. At the same time, they say, a number of their competitors selling identical products are exempt from the operation of those laws and therefore do business in Virginia Beach on Sundays, to the plaintiffs' great competitive disadvantage.

Although they raise additional federal constitutional questions, the plaintiffs' primary contention is that the Sunday-closing laws, as applied to them, constitute special legislation violating Article IV, sections 14 and 15, of the Constitution of Virginia. They named as sole defendant Paul A. Sciortino, Commonwealth's Attorney of the City of Virginia Beach. The defendant filed a demurrer and grounds of defense. The plaintiffs filed a motion for summary judgment, and the case was submitted to the trial court as a question of law. The court issued a letter opinion upholding the constitutionality of the laws in question and, on September 12, 1985, entered a final order denying the plaintiffs' motion for summary judgment, sustaining the defendant's demurrer, and dismissing the case.

Seven of the eight plaintiffs petitioned for an appeal, which we granted. The motion for judgment contains an unusually detailed recital of facts which we take as true for the purpose of reviewing the trial court's ruling on demurrer. In his grounds of defense, the defendant admits all facts essential to our decision. Because the matter was before the trial court on a motion for summary judg-

---

[1] Benderson Development Company, Inc., Best Products Co., Inc., Circuit City Stores, Inc., Hechinger Company, K Mart Corporation, S.L. Nusbaum & Company, Inc., Rose's Stores, Inc., and Zayre Corp.

ment, as well as on demurrer, and because no material facts are in dispute, we will proceed to final judgment here. Code § 8.01-681.

■ Virginia has had a Sunday observance law since at least 1610, *Mandell* v. *Haddon*, 202 Va. 979, 988, 121 S.E.2d 516, 523 (1961), and during the Colonial period, probably was subject to English Sunday laws dating from the thirteenth century. *Bonnie BeLo* v. *Commonwealth*, 217 Va. 84, 85, 225 S.E.2d 395, 396 (1976). During the Colonial period, these laws had a religious purpose, requiring every man and woman to " 'repair in the morning to the divine service.' " *Mandell*, 202 Va. at 988, 121 S.E.2d at 523 (citation omitted). During the Revolutionary War, in 1779, a Sunday-closing law was substituted which had an entirely secular purpose. It simply prohibited all Sunday labor or business except for "work of necessity or charity." 12 Hen. Stat. 336, 337 (1779). The purpose of the law was merely to provide a common day of rest "to prevent the physical and moral debasement which comes from uninterrupted labor." *Mandell*, 202 Va. at 988, 121 S.E.2d at 524 (citations omitted).

The 1779 law survived with only minimal change until 1960. Code of 1950, § 18-329 (repealed, Acts 1960, c. 358). While it was in force, the courts were confronted with numerous questions requiring interpretation of the phrase "works of necessity or charity."

■ In 1960, the General Assembly substantially revised the former law. The 1960 version continued a general prohibition against Sunday "work, labor, or business . . . except in household or other work of necessity or charity." A list of some 30 items, the sale of which was expressly deemed *not* to be a work of necessity or charity, was appended, thus proscribing Sunday sales of those items. The statute also included specific exemptions for certain items expressly deemed to *be* works of necessity, such as the operation of furnaces and plants, the sale of newspapers and motor fuels, and the operation of recreational facilities.

■ In *Mandell* v. *Haddon*, we upheld the 1960 law against constitutional challenges which invoked both the special legislation prohibition of the Virginia Constitution and the Equal Protection clause of the Fourteenth Amendment to the Federal Constitution. In *Mandell*, we reviewed the principles governing our review of a statute attacked as special legislation. We noted that the constitutional provisions against special legislation do not prohibit legislative classification, but do require that classifications be "natural

and reasonable, and appropriate to the occasion." 202 Va. at 989, 121 S.E.2d at 524. When a statute is challenged under the special legislation prohibition, we must determine whether the act makes an "arbitrary separation," and for this we must look to the purpose of the act, as well as the circumstances and conditions existing at the time of its passage. *Id.* There is a strong presumption in favor of the reasonableness of legislative classifications, and if any state of facts can be reasonably conceived which would support them, the existence of that state of facts at the time of passage must be assumed. *Id.*

■ Reviewing the 1960 law under the foregoing principles, we upheld it because we found that its classifications bore a "reasonable and substantial relationship to the object sought to be accomplished by the legislation." Specifically, we observed that the act "affects all persons similarly situated or engaged in the same business throughout the State without discrimination." *Id.* at 991, 121 S.E.2d at 525. Although the act contained exceptions, we observed that the exceptions related to "works of necessity under the modern day conception of things." Significantly, we noted that the prohibition on the sale of specified items was sufficiently comprehensive "to close a great majority of stores" throughout the Commonwealth. *Id.* at 990, 121 S.E.2d at 525. Thus, the statutory scheme was reasonably related to the attainment of the legislative goal: providing the people of Virginia a common day of rest.

■ In 1974, the General Assembly completely rewrote the Sunday-closing law. The 1974 law, which has been frequently amended, forms the basis of present Code § 18.2-341.[2] It contains

---

[2] As last amended by Acts 1988 c. 666, the statute now reads:

A. On the first day of the week, commonly known and designated as Sunday, no person shall engage in work, labor or business or employ others to engage in work, labor or business except in the following industries or businesses:

1. Transportation by whatever means and supporting facilities;

2. Public services and utilities, manufacturing, processing and plant operation of all types;

3. Publishing, including the distribution and sale of the products thereof;

4. Servicing, fueling and repair of motor vehicles, boats and aircraft, and the selling of parts and supplies therefor;

5. Operation of motion pictures theaters and the production of radio and television programs;

6. Medical services; and other services on an emergency basis;

7. Sports, athletic events and the operation of historic, entertainment and recreational facilities, and the sale or rental of boats, and swimming, fishing and boating equipment;

a general prohibition against Sunday labor but grants blanket exemptions to all transactions conducted by over 60 "industries or businesses" now grouped in 22 categories of exemptions. In addition to exemptions of the basic industries of agriculture, mining, and manufacturing, exemptions also cover retail stores which may engage in the sale of every conceivable kind of merchandise. The General Assembly has, on numerous occasions, added additional, and frequently broader, exemptions to those contained in the orig-

8. Agriculture, including the operation of nurseries and florist establishments;

9. Preparation and sale of prescription and nonprescription drugs and the sale of medical and hygienic supplies and baby supplies;

10. Wholesale food warehouses and ship chandleries;

11. Restaurants and delicatessens;

12. Janitorial, custodial and like services;

13. Operation of hotels and motels and funeral homes and cemeteries;

14. Mining and supporting facilities;

15. Sale of food, ice and beverages;

16. Sale of tobacco and related products;

17. A drugstore, a majority of the sales receipts of which consist of prescription and nonprescription drugs, health and beauty aids;

18. Sale of novelties, cameras, photographic supplies (including film and flash bulbs), antiques, pictures, paintings, art supplies, souvenirs, animals as pets, including tropical fish, and pet supplies;

19. Sale or leasing of noncommercial real property, mobile homes, and the sale of residential modular, panelized or other prefabricated houses, notwithstanding that such houses are not then erected or constructed on a site;

20. Providing of any service, product or other thing by means of a mechanical device not requiring the labor of any person;

21. Sale of any item, provided such sale takes place on publicly owned property or property designated by the governing body of any county, city or town, on a case-by-case basis, as the site of a festival, trade show, convention, festival market place or other type of public celebration or gathering. The governing body of a county, city or town may extend such a designation to nonpublicly owned property only when more than fifty percent of the area in which sales are made is used for otherwise exempt activities; and

22. Providing of any service or product by means of a mechanical device requiring only a telephone operator or answerer who may accept, but not process orders.

This section shall not be applicable to works of charity conducted solely for charitable purposes by any person or organization not organized or engaged in business for a profit.

B. Any person violating the provisions of this section shall be guilty of a misdemeanor.

C. Nothing contained herein shall be construed to permit any fine or penalty against any employee or agent who has been caused, directed or authorized by his employer to violate any provision of this section, in which case the employer shall be subject to the sanctions prescribed by this section.

inal 1974 enactment. One of these, covering "festival market places," permits a local governing body to designate, on a case-by-case basis, any privately-owned shopping center as exempt from the Sunday-closing law if it is the site of a public "gathering" and more than 50% of its sales area "is used for otherwise exempt activities." If the property is publicly-owned, even though leased for commercial use, the 50% requirement does not apply.

In 1974, the legislature enacted Code § 15.1-29.5, which permitted cities and counties, upon a favorable referendum vote, to remove themselves entirely from the operation of the Sunday-closing law. By employing this local option provision, the counties of Albemarle, Arlington, Buchanan, Chesterfield, Culpeper, Fairfax, Fauquier, Frederick, Gloucester, Grayson, Henrico, James City, King George, Loudoun, Mecklenburg, Orange, Page, Prince George, Prince William, Pulaski, Smyth, Spotsylvania, Stafford, Tazewell, Warren, and York, as well as the cities of Alexandria, Bristol, Charlottesville, Falls Church, Fredericksburg, Hopewell, Petersburg, Radford, Richmond, Waynesboro, Williamsburg, and Winchester, have chosen to remove themselves from the operation of the Sunday-closing law.

According to the undisputed facts, approximately 50% of all employed persons in Virginia work in counties and cities in which the Sunday laws are not in force. Nearly 57% of all employed persons in Virginia work in statutorily exempt businesses and industries. The parties agree that approximately 80% of Virginia workers are exempt from the operation of the law for one reason or the other.

Further, the General Assembly, as a part of the 1974 revision of the Sunday laws, enacted Code §§ 40.1-28.1 through 40.1-28.5. These provisions require employers to allow each nonmanagerial employee at least 24 consecutive hours of rest in each week. § 40.1-28.1. Such employees may choose Sunday as a day of rest as a matter of right, § 40.1-28.2, and sabbatarians may choose Saturday, § 40.1-28.3.[3]

Code § 40.1-28.5, however, provides that the foregoing laws "shall not apply to persons engaged in any of the industries or businesses enumerated in § 18.2-341(a)(1) through (19), except

---

[3] The plaintiffs make no attack on these statutes. They contend that if they are permitted to do business on Sunday, they can do so entirely with employees who volunteer to work on that day. Accordingly, we make no adjudication with respect to Code §§ 40.1-28.1 through 40.1-28.5.

(15) ['sale of food, ice and beverages']." Thus, employees in any of the other 60 or more businesses and industries exempted by the referenced subsections may be denied a day of rest by their employers.

■ We were first called upon to construe the 1974 statutory scheme in *Bonnie BeLo* v. *Commonwealth*, 217 Va. 84, 225 S.E.2d 395 (1976). There, the owners of two food stores were prosecuted for misdemeanors under the Sunday-closing laws because of the purchase, by law enforcement officers, of paper plates and cups from one store and a paperback novel from the other. The store owners challenged the constitutionality of the law on several grounds but, applying familiar principles, we did not reach the constitutional questions because of the construction we placed upon the statute.

Noting that businesses engaged in the "sale of food" were exempt from the Sunday-closing law entirely, we held that a food store was permitted, incidental to the operation of its business on Sunday, "to sell such non-food items as are sold in the ordinary and normal course of [its] business." *Id.* at 87, 225 S.E.2d at 398. We noted that while the older Sunday laws had exempted specified commodities, the purpose of the 1974 law was to regulate "industries and businesses" rather than commodities. Thus, the food stores, being in an exempt category, might sell whatever merchandise constituted their normal stock in trade. Accordingly, they had not violated the Sunday-closing law. *Id.*

The construction we gave to the Sunday law in *Bonnie BeLo* was the natural and inevitable result of the manifest purpose and clear language of the statute. Nevertheless, the plaintiffs contend that the consequences have been far-reaching, and adverse to them. They point out that any retail store which can successfully contend that it fits into one of the exempt categories may sell on Sunday any merchandise it wishes, including the same items the plaintiffs are forbidden to sell on Sunday. Thus, they say, the present law, unlike its predecessors, draws distinctions between merchants based on the character of the seller, rather than the nature of the items sold. They argue that the present law permits virtually any commodity to be sold on Sunday, but designates those merchants who may sell them and those who may not.

The plaintiffs further complain that the many exemptions contained in the law make it impossible to enforce fairly. The defendant commonwealth's attorney admits in his pleadings that he en-

forces the Sunday-closing law only when called upon to do so by "private complaint." Plaintiffs contend that this state of affairs results in the law being used as a weapon by those who are privileged to do business on Sunday, to prevent would-be competitors from opening on Sunday.

We upheld the 1974 Sunday-closing law against a constitutional challenge based upon the Equal Protection clause of the Fourteenth Amendment to the Federal Constitution in *Malibu Auto Parts* v. *Commonwealth*, 218 Va. 467, 237 S.E.2d 782 (1977). There, citing similar holdings by the Supreme Court of the United States in *McGowan* v. *Maryland*, 366 U.S. 420 (1961) (Maryland's Sunday-closing law not violation of Equal Protection clause), and *Gallagher* v. *Crown Kosher Market*, 366 U.S. 617 (1961) (Massachusetts' Sunday-closing law not violation of Equal Protection clause), we noted that the statute applies, within the areas subject to it, " 'to all who are similarly situated or engaged in the same kind of business.' " *Malibu Auto Parts*, 218 Va. at 471, 237 S.E.2d at 785 (quoting *Mandell*, 202 Va. at 922, 121 S.E.2d at 526). With regard to the lack of uniformity of application or enforcement of the law in different jurisdictions, we relied on the holding in *McGowan* that " 'territorial uniformity is not a constitutional prerequisite.' " *Malibu Auto Parts*, 218 Va. at 471, 237 S.E.2d at 785 (quoting *McGowan*, 366 U.S. at 427).

Although the plaintiffs here argue that the Sunday-closing law, as applied to them, denies them the "equal protection of the laws," we adhere to our decision in *Malibu Auto Parts* and hold that the statutory scheme successfully withstands scrutiny under equal-protection analysis.

*Amici curiae*, on brief, argue that the foregoing holding should end our inquiry because this Court, in some of its earlier decisions, has sometimes analyzed statutes under both the special-laws prohibitions of the Virginia Constitution and the Equal Protection clause of the Federal Constitution as though the two were substantially the same. *See, e.g.*, *Standard Drug* v. *General Electric*, 202 Va. 367, 117 S.E.2d 289 (1960); *Public Finance Corp.* v. *Londeree*, 200 Va. 607, 106 S.E.2d 760 (1959); *Avery* v. *Beale*, 195 Va. 690, 80 S.E.2d 584 (1954).[4]

---

[4] The Attorney General, representing the defendant commonwealth's attorney, does not make this argument.

It is true that for a long period of our history, the Equal Protection clause was interpreted by both federal and state courts in language that bore marked similarities to the analysis we made of statutes under the special-laws prohibition contained in the Virginia Constitution. But the two are not the same. The Fourteenth Amendment to the Federal Constitution, of which the Equal Protection clause is a part, was declared ratified in 1868, during the period of Reconstruction. Its purpose was the prevention of racial discrimination by state legislatures. Although it was, in later years, extended to apply to other kinds of state legislation, the Supreme Court of the United States has, based upon considerations of federalism, been markedly deferential to state laws which make economic classifications, when those laws have been challenged on Equal Protection grounds. *See, e.g., Whalen* v. *Roe,* 429 U.S. 589 (1977); *New Orleans* v. *Dukes,* 427 U.S. 297 (1976); *Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U.S. 356 (1973); *Ferguson* v. *Skrupa,* 372 U.S. 726 (1963). *McGowan* v. *Maryland,* for instance, held that Maryland's Sunday-closing law would offend the Equal Protection clause "only if the classification rests on grounds *wholly* irrelevant to the achievement of the State's objective." 366 U.S. at 425 (emphasis added). On the other hand, federal equal-protection analysis as applied to "suspect classifications," has become far more stringent than analysis of economic legislation. *See, e.g., Palmore* v. *Sidoti,* 466 U.S. 429 (1984); *Rogers* v. *Lodge,* 458 U.S. 613 (1982).

By contrast, the special-laws prohibitions contained in the Virginia Constitution are aimed squarely at economic favoritism, and have been so since their inception. Article IV, § 14, of the Virginia Constitution, provides, in pertinent part:

> "The General Assembly shall not enact any local, special, or private law in the following cases:
>
> . . . .
>
> (12) Regulating labor, trade, mining, or manufacturing
>
> . . . .
>
> . . . .
>
> (18) Granting to any private corporation . . . any special . . . right, privilege or immunity."

Article IV, § 15, Va. Const., provides, in pertinent part:

In all cases enumerated in the preceding section, . . . the General Assembly shall enact general laws. Any general law shall be subject to amendment or repeal, but the amendment or partial repeal thereof shall not operate directly or indirectly to enact, and shall not have the effect of enactment of, a special, private, or local law.

. . . .

No private corporation, association, or individual shall be specially exempted from the operation of any general law, nor shall a general law's operation be suspended for the benefit of any private corporation, association, or individual.

The foregoing provisions were first adopted as part of §§ 63 and 64 of the Constitution of 1902. They were carried forward into the present Constitution with no substantial change. Their purpose was to correct the perception that the General Assembly, in the nineteenth century, devoted an excessive amount of its time to the furtherance of private interests, *see* I A. Howard, Commentaries on the Constitution of Virginia, 536-37 (1974), and to counter the "sway that moneyed interests were seen to hold over state legislatures at the turn of the century." *Id.* at 543 (relating specifically to Va. Const. art. IV, § 14 (12), quoted above). "Taken together, the pervading philosophy of Article IV, sections 14 and 15 reflects an effort to avoid favoritism, discrimination, and inequalities in the application of the laws." *Id.* at 549. *See also Martin's Ex'rs* v. *Commonwealth*, 126 Va. 603, 611-12, 102 S.E. 77, 81 (1920); *Winfree* v. *Riverside Cotton Mills*, 113 Va. 717, 722, 75 S.E. 309, 311 (1912).

As noted above, under the Equal Protection clause, both state and federal courts will uphold state laws which make economic classifications "unless 'the classification rests on grounds *wholly* irrelevant to the achievement of the State's objective,' " *McGowan*, 366 U.S. at 425, or unless the law "is so unrelated to the achievement of a legitimate purpose that it appears irrational," *Ballard* v. *Commonwealth*, 228 Va. 213, 217, 321 S.E.2d 284, 286 (1984), *cert. denied*, 470 U.S. 1085 (1985). On the other hand, the test for statutes challenged under the special-laws prohibitions in the Virginia Constitution is that they must bear "a reasonable and substantial relation to the object sought to be accomplished by the legislation." *Mandell*, 202 Va. at 991, 121 S.E.2d at 525.

Although all legislative enactments are entitled to a presumption of constitutionality, we have not hesitated to invalidate laws found, upon careful consideration, to violate the prohibitions against special laws. *See, e.g. Riddleberger* v. *Chesapeake Railway*, 229 Va. 213, 327 S.E.2d 663 (1985); *Commonwealth* v. *Hines*, 221 Va. 626, 272 S.E.2d 210 (1980); *Green* v. *County Board*, 193 Va. 284, 68 S.E.2d 516 (1952); *County Bd. of Sup'rs.* v. *Am. Trailer Co.*, 193 Va. 72, 68 S.E.2d 115 (1951); *Shulman Company* v. *Sawyer*, 167 Va. 386, 189 S.E. 344 (1937); *Quesinberry* v. *Hull*, 159 Va. 270, 165 S.E. 382 (1932); *McClintock* v. *Richlands Corp.*, 152 Va. 1, 145 S.E. 425 (1928); *Shelton* v. *Sydnor*, 126 Va. 625, 102 S.E. 83 (1920).

Accordingly, we do not think that the equal-protection analysis which we made of the Sunday-closing law in *Malibu Auto Parts* is dispositive of the present case. Because of the deference due to acts of the General Assembly, we do not seek out constitutional challenges to statutes and decide them *sua sponte.* *See MacLellan* v. *Throckmorton*, 235 Va. 341, 345, 367 S.E.2d 720, 722 (1988). We will consider such challenges only when they have been properly raised and preserved in the court below, appropriately assigned as error, and briefed and argued on appeal. *Id.* The present case requires us to analyze the Sunday-closing law, in light of the constitutional prohibitions against special laws, for the first time.

In proceeding to a special-laws analysis of the Sunday-closing statutory scheme as it is now applied, we return to the tests by which we analyzed its statutory predecessor in *Mandell* v. *Haddon.* According the law the presumption of constitutionality to which it is entitled, we first inquire whether it "affects all persons similarly situated or engaged in the same business throughout the State without discrimination." *Mandell*, 202 Va. at 991, 121 S.E.2d at 525. The answer is obviously no. The law affects only those businesses, in those localities which remain subject to it, which cannot fit themselves within some 60 exemptions. Do the exempt categories confine themselves to "works of necessity under the modern day conception of things"? *Id.* at 990, 121 S.E.2d at 525. An inspection of the statutory exemptions makes plain that their aim was far broader. Is its scope sufficient to "close a great majority of stores" throughout the Commonwealth? *Id.* Its present scope is sufficient to close only a small minority of stores in

Virginia. Merchandise of every kind can be purchased in every county and city on Sunday.

Finally and crucially, we must inquire: does the statutory scheme, as applied, bear "a reasonable and substantial relationship to the object sought to be accomplished by the legislation"? *Id.* at 991, 121 S.E.2d at 525. That object is the same as the object of all Sunday-closing laws since 1779: to provide the people of Virginia a common day of rest "to prevent the physical and moral debasement which comes from uninterrupted labor." *Id.* at 988, 121 S.E.2d at 524. Plainly, the answer is no. The statute covers only about 20% of the employed persons in the Commonwealth. Further, in those jurisdictions currently covered by the law, employers engaged in the approximately 60 businesses or industries exempted by the act's provisions may deny their employees a weekly day of rest. Most employees in jurisdictions subject to the Sunday-closing law are exposed to such a requirement, if their employers should see fit to impose it. Ironically, employees in jurisdictions *not* subject to the Sunday-closing law may not be compelled to work on Sunday. We conclude that the present statutory scheme, as presently applied, fails to pass each of the tests we articulated in *Mandell* to distinguish general laws from special laws.

The plaintiffs make no contention that the General Assembly, in enacting the present Sunday-closing laws in 1974, or in repeatedly amending them thereafter, had any intent to practice invidious discrimination against them, or against anyone. The laws appear facially to be reasonably related to the attainment of the legislative goal. Further, a set of facts can be conceived which would reasonably justify each of the exemptions appended to the statute. Indeed, we cannot say that the entire statutory scheme, or any of its component parts considered alone, creates a classification which rests *wholly* on grounds unrelated to the attainment of the legislative goal. This is the principal reason we upheld the law against an equal-protection challenge in *Malibu Auto Parts*, and now reaffirm that holding.

But the plaintiffs do not make a facial attack on the Sunday-closing law. Rather, they argue that it is a special law *as applied*. They contend that a statutory scheme, which began its life as a general law, has become, by application, a special law by attrition: through subsequent piecemeal steps, each proper in itself, which reduced the ambit of the law to a very few businesses.

Among these steps, they point to the local-option feature and the fact that over half the population of the Commonwealth has utilized it to escape the law's effects entirely; to the construction we necessarily gave the law in *Bonnie BeLo*; to the repeated acts of the General Assembly creating additional and broader exemptions culminating in an exemption for nearly any shopping center a local governing body might decide to favor; and finally, to the difficulty of enforcement resulting in prosecutions only on "private complaint." We agree that none of these steps was in itself improper in any respect, but we further agree that their combined effects have reduced the application of a general law to the kind of special legislation prohibited by Article IV, sections 14 and 15 of the Virginia Constitution.

The framers of Section 64 of the Constitution of 1902 (now art. IV, § 15, quoted above) were well aware of the danger that a general law might be converted into a special law by subsequent events, and to that end provided specific protections against such changes, whether accomplished by amendment, partial repeal, exemption, or suspension of a general law "for the benefit of any private corporation, association, or individual." *Id.* In *Martin's Exr's* v. *Commonwealth*, 126 Va. at 612, 102 S.E. at 80, we said: "Though an act be general in form, if it be special in purpose and *effect*, it violates the spirit of the constitutional prohibition." (Emphasis added). We also observed: "an arbitrary separation of persons, places, or things of the same general class, so that some of them will and others of them will not be affected by the law, is of the essence of special legislation." *Id.* at 610, 102 S.E. at 79.

In earlier decisions, we have held unconstitutional laws which were general when first enacted, but were rendered special by subsequent amendment. *County Bd. of Sup'rs* v. *Am. Trailer Co.*, 193 Va. 72, 68 S.E.2d 115 (1951); *Quesinberry* v. *Hull*, 159 Va. 270, 165 S.E. 382 (1932). As demonstrated by the present case, general laws may be rendered special in their application by a combination of several factors, of which legislative amendment may be but one. Because the power of judicial review is the only protection which exists against legislation which has become unconstitutional as applied, our role is not limited to examining the effect of legislative amendments. When the application of a law is fairly challenged under the Constitution, it is our duty to examine its actual effect upon those subject to it, regardless of the origin of the factors which combine to produce that effect. Having thus ex-

amined the Sunday-closing laws as applied to the plaintiffs in this case, we conclude that they are special laws, and are therefore unconstitutional and void.

We will reverse the judgment appealed from. Because the facts before us are sufficient to enable this Court to attain the ends of justice, we will enter final declaratory judgment here. Code § 8.01-681.

*Reversed and final judgment.*

CARRICO, C.J., dissenting.