JOSEPH T. BUCHANAN, ET AL.

V.

CITY OF CHESAPEAKE

Record No. 860382

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*Neil C. Bonney (White and Selkin*, on brief), for appellants.
*Samuel J. Webster (Norvell O. Scott, III; Leonard C. Heath, Jr.; Williams, Worrell, Kelly & Greer, P.C.*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this employment dispute, we determine whether the trial court correctly ruled that certain salaried municipal employees were not entitled to "overtime" compensation for a 15-minute period they were required to work daily prior to commencement of their regular eight-hour shift.

Appellant Joseph T. Buchanan and 20 other police officers of the Uniform Patrol Bureau of the City of Chesapeake Police Division brought this damage suit against the City. They alleged breach of an agreement based upon a City administrative regulation and an implied contract. According to the allegations, the agreement was that the officers would be eligible for overtime pay when they worked in excess of eight hours per day. After a bench trial, the court denied the claims and we awarded the plaintiffs this appeal from the 1986 order dismissing the action.

Applying settled appellate principles, we will view the facts in the light most favorable to the City. The City's Administrative Regulation 20.4, dealing with overtime policy, defines "Overtime hours" as those hours "exceeding the average regularly scheduled hours established by the appointing authority." The evidence showed that the "appointing authority" for the City Police Division, including the Uniform Patrol Bureau, is the Chief of Police. The evidence further showed that the plaintiffs, as public safety officers within the Uniform Patrol Bureau, were subject to this regulation. This Bureau consists of officers who provide 24-hour crime deterrence coverage on the City's streets. It is charged with different responsibilities and is distinct from other uniformed units such as the Traffic, Warrant, and Communications Bureaus.

The record shows that for many years, the police chief, acting through his authorized representative, has established that the "regularly scheduled hours" for the Uniform Patrol Bureau is eight hours and 15 minutes. This period consists of approximately 15 minutes of briefing, training, preparation, and information exchange followed by eight hours of street patrol. At times, the policy of reporting 15 minutes before commencement of the actual street shift was not strictly observed by individual officers. Therefore, on February 1, 1984, the Chief of Police "reaffirmed" the "established" policy that the "regularly scheduled hours" for the Uniform Patrol Division, including these plaintiffs, were eight hours, 15 minutes.

The plaintiffs note, and the City agrees, that another portion of Administrative Regulation 20.4 provides, in effect, "that overtime hours amounting to one-quarter hour or more on a regular work day requires a payment of overtime." The plaintiffs argue that the February 1984 order for all uniformed patrol officers "to report to duty fifteen (15) minutes before the beginning of their normal shift for purposes of 'training,'" was a changed policy, increased the work day by 15 minutes, and now "requires plaintiffs to work in excess of eight (8) hours per day." Thus, they assert entitlement to compensation for the 15 minutes overtime each day they have been required to work since February 1, 1984.

The trial court, in a memorandum opinion, ruled "that there is no requirement in law that the plaintiffs be paid 'overtime' for work done over 8 hours and that they have failed to prove any contractual right to such compensation." This decision was correct both factually and legally.

■ The trial court was justified in finding as a matter of fact that the plaintiffs failed to establish a contract, express or implied, which fixes eight hours as the regular number of their working hours. Although conflicting evidence was submitted on the issue, the trial court resolved this conflict in favor of the City and this factual finding will not be disturbed on appeal.

■ Moreover, the applicable City regulation nowhere sets eight hours as the normal working day. Indeed, the regulation expressly permits the "appointing authority" to establish the "regularly scheduled hours" beyond which the employee is entitled to overtime pay. And the City's evidence, accepted by the trial court, showed that the Chief of Police, as the appointing authority, had set the work day at eight hours, 15 minutes for the Uniform Pa-

trol Bureau to which the plaintiffs belonged. There was abundant evidence to establish both the purposes for the policy and the reasonableness of the level of the "regularly scheduled hours."

As an alternative to their attempt to establish a contractual basis for their claims, the plaintiffs mount a constitutional attack on the City's overtime policy. Without any specific reference to the federal or state constitutions, the plaintiffs broadly assert they were denied "Equal Protection of the laws." They allege treatment "in a disparate manner" because they were required to work eight and one-quarter hours per day while other uniformed officers, such as desk, communications, and traffic officers, were required to work only eight hours daily, all for the same compensation. We reject the argument without reaching the merits of the contention.

█ This is a simple contract dispute over fifteen minutes of overtime daily. Such a compensation disagreement does not invoke the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The federal constitution "must not be trivialized by being dragged into every personnel dispute in state and local government. Disputes over overtime . . . do not implicate the great objects of the Fourteenth Amendment." *Brown* v. *Brienen*, 722 F.2d 360, 365 (7th Cir. 1983). *See Berry* v. *City of Portsmouth*, 562 F.2d 307, 312 (4th Cir. 1977); *Heath* v. *City of Fairfax*, 542 F.2d 1236, 1238 (4th Cir. 1976).

█ Likewise, the plaintiffs' claims do not implicate the Constitution of Virginia. We assume plaintiffs rely on Article I, Section 11, dealing with due process, there being no specific equal protection clause in the state constitution. Section 11, however, is no broader than the equal protection clause of the Fourteenth Amendment. *Archer* v. *Mayes*, 213 Va. 633, 638, 194 S.E.2d 707, 711 (1973).

For these reasons, the judgment of the trial court dismissing the action will be

*Affirmed.*

POFF, J., concurring.

I concur in the majority's decision, but I feel constrained to add a footnote to the opinion.

I do not think we should assume, as the majority does, that the plaintiffs' constitutional claims are based upon the due process guarantee of Article I, Section 11, of the Constitution of Virginia. As I understand their argument, the plaintiffs contend that they are victims of economic discrimination. "[T]he special-laws prohibitions contained in [Article IV, Section 14, of] the Virginia Constitution are aimed squarely at economic favoritism, and have been so since their inception." *Benderson Development Co.* v. *Sciortino*, 236 Va. 136, 146, 372 S.E.2d 751, 756 (1988).

I would assume that the plaintiffs rely upon the special-laws clause. I would hold, however, that the classification of which the plaintiffs complain is rationally related to a legitimate governmental objective and affirm the judgment of the trial court dismissing the action.