## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Fredericksburg Auto
Auction, Inc., et al.

v.

Commonwealth of Virginia,
Division of Motor Vehicles

May 31, 1990

Case No. C-88-648

By JUDGE WILLIAM H. LEDBETTER, JR.

In this case, the plaintiffs challenge the constitutionality of certain provisions of the motor vehicle dealer licensing laws and the new Motor Vehicle Transaction Recovery Fund, particularly the application of those statutes to out-of-state dealers selling at wholesale auctions in Virginia.

In 1988, the General Assembly revised several provisions of the Motor Vehicle Dealers Licensing Act (now Virginia Code § 46.2-1508 *et seq.*) and created the Motor Vehicle Transaction Recovery Fund (now Virginia Code Section 46.2-1522 *et seq.*). The plaintiffs instituted this suit in December of 1988 to challenge the validity of these statutes.

Two of the plaintiffs, Fredericksburg Auto Auction, Inc., and Harrisonburg Auto Auction, are licensed motor vehicle dealers that operate wholesale auto auctions in Virginia. The third plaintiff, Raymond H. Smith, is a dealer licensed in Pennsylvania who buys and sells vehicles through wholesale auto auctions in Virginia.

The defendant, DMV, is the agency of the Commonwealth charged with the responsibility to administer and enforce the legislation in question.

At a hearing on December 20, 1988, the court denied the plaintiffs' request for a preliminary injunction against implementation of the challenged statutes. *See* opinion letter of December 27, 1988, 14 Va. Cir. 244.

The case was heard on its merits on January 12, 1990. The parties presented evidence, supplemented by de bene esse depositions. Counsel then filed memoranda in support of the parties' respective positions.

(On February 28, 1990, the plaintiffs, with leave of court, filed an amended bill. DMV did not file a response to the amended bill. Since that omission has not been questioned, however, the court assumes that the parties have agreed that DMV's original answer is effective as a response to the plaintiffs' amended claims. In fact, the amended bill neither adds nor subtracts from the original pleading in any significant way. Therefore, the court will proceed to decide the issues as articulated in the amended bill.)

### The Legislation

Chapter 15 of Title 46.2 ("Motor Vehicles") addresses motor vehicle dealers. Only two parts of that chapter are involved here: Article 2, which contains the statutes governing dealer licensing, and Article 3, which establishes the Motor Vehicle Transaction Recovery Fund.

Licensing of dealers is nothing new. The legislative scheme by which dealers are licensed, qualified, and regulated predates by decades the 1988 enactments which give rise to this litigation. Pursuant to that scheme, it is unlawful to engage in business as a motor vehicle dealer in Virginia without first obtaining a license from DMV. "Dealer" is a defined term. Section 46.2-1500. The definition is in two parts. The first part sweeps broadly, encompassing almost anyone who transfers a motor vehicle for something of value. The second part contains twelve categories of exclusions, thereby constricting the scope of the definition so that its application is limited to persons engaged in buying, selling, and otherwise dealing in the transfer of motor vehicles and motor vehicle documents as a business for profit. The 1988 amendment added a sentence to the dealer licensing statute (§ 46.2-1508) to require that a person licensed as a dealer in another

state obtain a certificate of registration in order to sell vehicles at wholesale auctions in Virginia. "Wholesale auction" is defined. Section 46.2-1500. The manner in which an out-of-state dealer registers is described in Section 46.2-1509. A registration fee is required. Section 46.2-1519(A)(4).

The Fund is created to compensate victims of fraud practiced by licensed or registered dealers. Section 46.2-1523. Any person who is injured by reason of such fraud must obtain a judgment in a Virginia court and make a claim against the Fund. DMV notifies the dealer when a verified claim is filed and directs the tortfeasor to pay the judgment debt. If the debt is not paid, the claim is satisfied from the Fund, subject to limitations contained in the statutes, and DMV seeks reimbursement against the dealer. Sections 46.2-1524 and 46.2-1526. All licensed and registered dealers are required to contribute to the Fund. Section 46.2-1522.

### Constitutional Challenges

The plaintiffs contend that these statutes are unconstitutional. Specifically, they say that (1) the registration requirement is discriminatory and violates the equal protection clause of the Fourteenth Amendment of the U. S. Constitution and Article IV, Sections 14 and 15, of the Constitution of Virginia; (2) the registration provisions, including the fees (which the plaintiffs refer to as a "license tax"), violate the commerce clause of the U. S. Constitution and Article I, Section 1, of the Constitution of Virginia; (3) the fees are not uniform as required by Article X, Section 1, of the Constitution of Virginia; (4) the Fund constitutes an unlawful taking of property without due process in violation of the Constitution of Virginia; (5) the Fund constitutes an unlawful expenditure of public funds for a private purpose in violation of Article X, Section 10, of the Constitution of Virginia; (6) the registration provisions confer impermissibly broad discretion upon the Commissioner of DMV to revoke certificates of registration, in violation of Article I, Section 1, of the Constitution of Virginia; and (7) the Fund violates the full faith and credit clause of

the U. S. Constitution because it fails to compensate nonresident victims of dealer fraud.

## Challenges to the Licensing Act

The ability of the state, through the exercise of its police power, to reasonably regulate the sale of new and used motor vehicles, and to require those engaged in that business to be licensed is beyond question, *See Joyner v. Centre Motor Co.*, 192 Va. 627 (1951). Insofar as the plaintiffs' challenge to the Act questions that authority, it will not be considered further.

The plaintiffs contend that the 1988 amendments single out wholesale auctions "to bear the brunt" of the regulatory provisions. In order to analyze this contention, and DMV's response to it, the recent amendments must be viewed in proper context.

As noted above, dealer licensing is not new. For many years, anyone engaged in the business of dealing in new or used motor vehicles has been required to obtain a license. In order to be licensed, such person must apply to DMV. Denial, suspension, and revocation of licenses are governed by the statutes. *See* §§ 46.2-1574 *et seq.* A license will not be issued to a dealer unless he has an established place of business in Virginia and maintains proper records of his transactions, in compliance with Section 46.2-1510. The dealer must hold a certificate of qualification, for which the Commissioner of DMV may establish minimum prerequisites (§ 46.2-1511), and the dealer's salespersons must be similarly qualified (Section 46.2-1512). The licensee must pay annual fees (§ 46.2-1519) and must comply with the regulations of DMV relating to motor vehicle dealers.

The precise language of the 1988 amendment is the italicized portion of the following excerpt from Section 46.2-1508:

It shall be unlawful for any person to engage in business in the Commonwealth as a motor vehicle dealer . . . without first obtaining a license as provided in this chapter. *However, any person licensed in another state as a motor vehicle dealer may sell motor vehicles at whole-*

*sale auctions in the Commonwealth after having obtained a certificate of dealer registration as provided in this chapter . . . .*

To obtain a certificate of dealer registration, an out-of-state dealer must apply to DMV and pay the required fee. He must be licensed in another state. He is not required to establish a place of business in Virginia, and he is exempt from all but a few of the laws governing the licensing of in-state dealers.

In truth, then, the new provision that requires registration of out-of-state dealers selling at wholesale auctions in Virginia is an *exception* to the basic requirement that all dealers must be licensed. Neither wholesale auctions nor those that sell there are "singled out to bear the brunt" of this legislation, as the plaintiffs assert. Instead, these dealers, who obviously are doing business in Virginia by selling vehicles here, are required simply to register and to pay a fee. The requirements of a *registered* dealer are significantly less, not more, stringent than those applicable to a *licensed* dealer, and the amount of the fee is half that of licensed dealers.

Therefore, viewing the scheme of the legislation in proper context, it is the opinion of the court that out-of-state dealers selling at wholesale auctions in Virginia are not the object of special or discriminatory treatment under the Act.

The Commonwealth has a legitimate interest requiring such dealers to register here. Although they may be licensed in another state, their commercial contacts with Virginia are more than minimal since they are selling cars and trucks through wholesale auctions located here. The registration provisions, unlike the general licensing statutes, do little more than enable the Commonwealth to identify the participants in this commercial activity. Few of the dealer regulations apply, and even the plaintiffs concede that the required fees are little more than nominal.

The plaintiffs point out that these out-of-state dealers are selling at *wholesale* auctions, not open to the general public; therefore, they argue, Virginia has little or no legitimate interest in regulating this activity which only peripherally affects the public. First, if this were true, there would be no purpose in regulating

wholesale auctions themselves. However, this is not so, and the plaintiffs do not challenge that aspect of the regulatory scheme. Second, the argument is without merit because sales of motor vehicles in Virginia, whether wholesale or retail, are clothed with a public interest and are legitimately subject to reasonable and just regulation. The fact that a sizeable proportion of these vehicles is sold through the auctions to other out-of-state dealers, so that Virginia consumers do not directly suffer the consequences of any fraudulent, dishonest, or harmful acts connected with such transactions is not dispositive. The Commonwealth has the right to regulate against, or at least to require registration of the actors so that it can identify fraudulent, dishonest, and harmful commercial practices and transactions within its borders whether or not the ultimate victim, i.e., the retail consumer, is a Virginian or a Californian. Further, the General Assembly is not required to do the foolish or the impossible. The court fails to see how or why the legislature should attempt to regulate, or identify, only those out-of-state dealers who sell at auction to in-state dealers, excluding all others. Such fine-line distinctions are not necessary in order for commercial legislation to pass constitutional muster.

Next, the plaintiffs attack the exceptions. They argue that the legislation does not regulate dealer-to-dealer sales outside the auctions. Although much time was devoted to this argument, it flies in the face of the clear legislative definition of "dealer," § 46.2-1500, and the licensing provisions in Chapter 15 relating to all such dealers. They also argue that the new registration requirement does not apply to finance companies, rental car companies, or insurance companies selling at the auctions and thus is discriminatory against out-of-state licensed dealers. As DMV points out, these exempted entities are not just exempt from registration; they are exempt from licensing. They are, and apparently always have been, exempt from licensing simply because they are not ordinarily engaged in the business of dealing in the sale and purchase of motor vehicles. They are among the twelve categories of persons and entities excluded from the definition of "dealers" in § 46.2-1500. Because they are not dealers in the normal course of business and do

not ordinarily sell vehicles for profit, they were not included in the new registration requirement. When rental car companies, for example, sell cars at the wholesale auctions, they do so to get the vehicles off their hands; they are not engaged in the activity as a "business" and ordinarily do not even seek to make a profit. They remain exempt for the reasons explained. Without doubt, this is a proper classification. The legislature may adopt a regulatory scheme applicable to those who engage in a commercial activity for profit as a part of their ordinary business pursuits, while exempting those who engage in the same activity when it is not a part of their regular or normal business. In other words, the legislature can regulate dealers without regulating non-dealers who engage in the same activity from time to time. Therefore, the 1988 amendments are not constitutionally infirm merely because they did not add finance companies, rental car companies, or anyone else in the twelve exempt categories selling at wholesale auction to the licensing or registration requirements.

There is a strong presumption in favor of constitutionality of all legislative enactments, including legislation that creates classifications. This is especially true when the legislation involves economic classification rather than "suspect" classification based on race, sex, or national origin, which bears stricter scrutiny. Nevertheless, the legislature cannot create commercial or economic classifications which are arbitrary, improper, and artificial separations of persons, places, or things so that some will and some will not be affected by the law. In order for such classifications to be permissible, "there must be some difference in the situation of the subjects of the different classes as to reasonably justify some variety of the rule" in respect to them. *Martin's Executors v. Commonwealth*, 126 Va. 603 (1920). *Also see Benderson Development Co. v. Sciortino*, 236 Va. 136 (1988).

For the reasons explained above, the 1988 amendments of which the plaintiffs complain are not discriminatory, are not arbitrary classifications, and do not constitute "special laws."

The plaintiffs contend that the legislation confers impermissibly broad discretion upon the Commissioner of DMV. The authority of the Commissioner to deny, suspend,

and revoke licenses and certificates of registration is detailed in the statutes. The regulations must be reasonable and purposeful, and their application to individuals is subject to judicial review. The 1988 amendments did not broaden this administrative authority. The court rejects this argument and finds nothing in the legislation that confers unbridled discretion upon anyone.

Finally, the plaintiffs contend that the amendments violate the Commerce Clause of the U. S. Constitution. In their memoranda, the plaintiffs and DMV disagree as to the standard of proof to use or the test to be applied in determining whether this type of legislation violates the Commerce Clause. Regardless of the appropriate standard or test, the court finds that the burden created by the new registration requirements "is barely discernable" and therefore does not impose an improper or impermissible burden upon interstate transactions or the actors. *See Underhill Associates v. Coleman*, 504 F. Supp. 1147 (E.D. Va. 1981). The statutory provisions serve a legitimate state interest, impose no impermissible burdens, and establish no improper classifications or distinctions with respect to interstate commercial activities.

### Challenges to the Fund

The purpose and scope of the Motor Vehicle Transaction Recovery Fund are explained above. Registered dealers as well as all licensed dealers and salespersons must contribute to the Fund.

First, the plaintiffs claim that the Fund is facially unconstitutional because it amounts to the use of public funds for private purpose and because it is a "taking" in violation of due process.

In that the funds are generated by legislation, they are "public," but the purpose of the legislation is to create a fund available only to those members of the public who are victims of dealer fraud. Assessments are deposited in a special fund "to be expended to pay claims against the fund and for no other purpose." Section 46.2-1522. The Fund is not a raid on the general treasury for the benefit of a special few.

The Fund is similar to the Contractor Transaction Recovery Fund (§§ 54.1-1118 *et seq.*) and the Real Estate

Transaction Recovery Fund (§§ 54.1-2112 *et seq.*). Licensed attorneys must contribute to a special fund used to administer and enforce the code of professional conduct for attorneys. Section 54.1-3913. There are other such funds in this and other states. These funds are created and maintained by assessments against those licensed to engage in the particular trade, occupation, profession, or commercial activity, for the benefit of those who suffer specific and determinable loss at the hands of those so engaged. These consumer protection measures do not constitute an unlawful "taking" and are a reasonable and proper exercise of the state's police power.

The plaintiffs also challenge the Fund as it applies to them. The assessment applies to all persons licensed as dealers, to all persons registered as out-of-state dealers selling in Virginia at wholesale auctions, and to salespersons. The Constitution does not prohibit legislative classification but does require that the classification be reasonable and explainable, not artificial and arbitrary. *See Benderson, supra.* Here, the court sees no legitimate argument against the distinctions made by the legislature with respect to the Fund, those who must contribute to it, and those who may make claims against it.

### Conclusion

The court is of the opinion that the 1988 amendments to Chapter 15 of Title 46.2 complained of by the plaintiffs are constitutionally permissible and valid. The relief sought in the bill will be denied and the suit dismissed.