Volkswagen of America, Inc.

v.

Richard D. Holcomb, etc.,
and Miller Auto Sales, Inc., etc.

March 15, 2001

Case No. HK-1639

BY JUDGE MELVIN R. HUGHES, JR.

This is an appeal by Volkswagen of America, Inc. (VW) for review of an administrative decision of the Commissioner of the Virginia Department of Motor Vehicles (Commissioner or DMV) finding that VW violated § 46.2-1569(7) and ordering certain relief.

The case concerns the method of allocation of newly manufactured Volkswagen automobiles for distribution among Virginia retail dealers. After a complaint by a Virginia dealer, the Commissioner adopted the recommendations of a designated hearing officer and found that Volkswagen's vehicle allocation methodology violated § 46.2-1567(7) and directed that Volkswagen replace the questioned allocation method with a compliant new methodology.

Miller Auto Sales, Inc. (Miller) of Winchester, Va. filed the complaint with the DMV asserting that Volkswagen improperly ties the allocation of its

vehicles to its "Create an Apostle Program" or Customer Satisfaction Index and that it did not receive an equitable share of vehicle allocations from VW in violation of § 46.2-1569(7). In its pertinent parts § 46.2-1569(7) provides:

> Notwithstanding the terms of any franchise agreement, it shall be unlawful for any manufacturer, factory branch, distributor, or distributor branch, or any field representative, officer, agent, or their representatives. . . .
> (7) To fail to ship monthly to any dealer, if ordered by the dealer, the number of new vehicles of each make, series, and model needed by the dealer to receive a percentage of total new vehicles sales of each make, series, and model equitably related to the total new vehicle production or importation currently being achieved nationally by each make, series, and model covered under the franchise. Upon the written request of any dealer holding its sales or sales and service franchise, the manufacturer or distributor shall disclose to the dealer in writing the basis upon which new motor vehicles are allocated, scheduled, and delivered to the dealers of the same line-make. In the event that allocation is at issue in a request for a hearing, the dealer may demand the Commissioner to direct that the manufacturer or distributor provide to the dealer, within thirty days of such demand, all records of sale and all records of distribution of all motor vehicles to the same line-make dealers who compete with the dealer requesting the hearing.

Thus, the statute makes it unlawful for a manufacturer to fail to ship monthly to dealers new vehicles ordered by the dealer that would give the dealer an equitable percentage of the manufacturer's allocation of those vehicles. The points of contention raised by VW in this appeal are many. They can be broadly characterized as substantive, procedural, and constitutional.

*Course of Proceedings*

After Miller filed the complaint, DMV, through its Commissioner, appointed a hearing officer to conduct proceedings on the complaint. VW filed a motion to dismiss the proceedings on constitutional grounds. The hearing officer overruled the motion and later conducted an evidentiary hearing and heard evidence. Following, the hearing officer issued a proposed decision recommending that the Commissioner of DMV find against VW on the complaint and imposing a number of sanctions. The Commissioner followed

the decision proposed by the hearing officer. The Commissioner ordered that VW replace its allocation methodology with a new allocation methodology and, by order, prohibited VW from utilizing allocations or vehicle supply as an incentive for any VW program, unless permitted by DMV. The decision also reserved the right to DMV to sanction VW in the event of willful failure to comply in the future.

## Standard of Review

On an appeal of a final agency decision to this court, the burden is on the appellant to "designate and demonstrate an error of law subject to review by the court." Va. Code § 9-6.14:17. The court must give deference to an agency decision based on the proper application of its expert discretion. *See Fralin v. Kozlowski*, 18 Va. App. 697, 701 (1994).

There are three categories of error subject to review. Each has its own standard of review. First is whether the agency acted in accordance with the law. *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242 (1988). For these alleged errors, the court may reverse the agency's decision only if the agency's construction of its regulation is arbitrary and capricious or fails to fulfill the agency's purpose as defined by its basic law. *Virginia Real Estate Bd. v. Clay*, 9 Va. App. 152, 161 (1989).

Second is whether the agency decision has sufficient evidence to support its findings of facts. *Johnston-Willis*, 6 Va. App. at 242. Where there has been a formal agency hearing, the determination of fact questions is to be made "upon the whole evidential record provided by the agency." *Virginia Real Estate Commission v. Bias*, 226 Va. 262, 269 (1983). The findings must be supported by substantial evidence, which means "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). (Emphasis in *Bias*.) Agency findings of fact may be rejected only if, after considering the record as a whole, the reviewing court determines that a reasonable mind would necessarily come to a different conclusion. *Id.*

Third is whether the agency process complied with procedure. If an agency action failed to follow proper procedures and the error was not harmless, such action may be reversed even if supported by substantial evidence. *Johnston-Willis*, 6 Va. App. at 243. Where the legal issues require a determination by the court on review whether an agency has "failed to observe required procedures, less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination." *Id.*

*The Constitutional Issues*

VW argues that the statute is vague on its face and as applied because it contains no guidance on how to determine what is an "equitable number." In other words, VW says that the statute's use of the "equitably related" standard does not provide sufficient guidance as to the number of cars a manufacturer or distributor has to ship to a given dealer and that the interpretations of what is required are limitless. As a result, VW continues, the statute violates the due process clause of the Fourteenth Amendment of the United States Constitution.

There is a presumption of constitutionality when a statute is challenged as unconstitutional. *Benderson etc. v. Sciortino*, 236 Va. 136, 141 (1988). A claim of constitutional infirmity due to vagueness evokes application of the proper test depending on whether the statute in question is criminal, quasi criminal, or threatens a fundamental right or is an economic regulation. The court finds the statute here is an economic regulation.

"[T]he degree of vagueness that the constitution tolerates — as well as the importance of fair notice and fair enforcement — depends in part on the nature of the enactment. . . ." *Village of Hoffman Estates v. Flipside*, 455 U.S. 484, 498 (1982). Here, the statute is not criminal or quasi criminal. Rather, it is an economic regulation and as such "is subject to a less strict vagueness test." *Id.* Accordingly, the statute cannot be attacked for vagueness on its face as criminal. No fundamental right is involved. What the statute means to impose is a requirement that Virginia dealers get their fair share of cars, regardless of the methods a manufacturer chooses. The word "equitable" is plain in its meaning in the context because, *inter alia*, it refers to the car business and the customs thereof in the distribution of vehicles for sale in and among retail dealers. The court rejects this contention.

Next, VW argues that the statute violates the Commerce Clause of the United States Constitution in that it attempts to regulate commerce in states other than Virginia. The cases have set out analyses for testing commerce clause violations. First, the court must determine (1) whether a statute directly regulates or discriminates against interstate commerce or (2) whether the statute is neutral and has only an indirect effect, then a balancing test must be applied which weighs the burden on commerce with the local benefit. To be unconstitutional, the burden must be clearly excessive in relation to local benefit. *See Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 570-79 (1986). The court disagrees with VW.

On its face, there is no tie in the statute to the number of vehicles allocated to Virginia to allocations in another state. Looking at its four corners

the statute makes no reference to what happens in other states. Rather, by whatever means a manufacturer may operate with in allocating vehicles elsewhere, as noted, the statute aims to insure an equitable or fairer allocation to retail dealers here.

Applying a balancing test, the local benefit to Virginia retailers in getting a fair allocation does not involve a direct regulation on what happens allocation-wise elsewhere. As stated what allocation method a manufacturer may choose for use in different states is not implicated in applying the statute because it is facially neutral as to the methodology in other states.

### Procedural Questions
### and the Virginia Administrative Process Act

VW argues that it was entitled to an informal fact-finding hearing, under §§ 9-6.14:3 and 9-6.14:11, which it did not receive. According to VW, because the statute does not delineate the procedures that DMV should use, the procedures outlined in the Virginia Administrative Process Act must be followed. Va. Code § 9-6.14:11 titled "informal fact finding" states:

> Agencies shall ascertain the fact basis for their decisions of cases through informal conference or consultation proceedings unless the named party and the agency consent to a waive such a conference or proceeding to go directly to a formal hearing.

VW contends the omission was not harmless because, had such a hearing been afforded, DMV would have had to indicate the evidence against it and thus VW could have mounted an effective defense.

Without deciding the issue of application of VAPA to this proceeding, the court rejects VW's position and decides against VW on this issue. The record makes no reference to VW raising the question of an informal fact finding at any time before the agency. Rules 5:25 and 5A:18 governing issues on appeal apply to agency determinations and apply to agency appeals. *Pense Holdings, Inc. v. Auto Ctr. Inc.*, 19 Va. App. 703 (1995).

VW also raises issues concerning the adequacy of notice to inform it of the operative law and the factual basis of the claim. As a result, it was deprived of an opportunity to present appropriate evidence and provide a complete defense because the fact of a challenge to the allocation system was not disclosed. It also contends that both the hearing officer's determination and the Commissioner's ruling make reference to the fact of VW having the

burden of proof when the burden should have been on the complainant, Miller. The court rejects VW's position on those two procedural points.

First, as to notice, the notice provided reference to the statute in question. Miller's letter complaint references the allocation system. And for reasons discussed, the allocation system methodology is necessarily subject to scrutiny because, in determining the question of equitable share of cars, questions of allocation methodology are necessarily involved.

Second, regarding burden of proof, the record discloses a statement by the hearing officer setting out how the presentation of evidence would proceed. That statement references no objection being made to the format to be followed. Accordingly, VW waived any objection on the issue of burden of proof.

## The Evidence

VW contends primarily that the record contains no evidence that it shipped an inequitable number of cars to Miller or to any other Virginia dealer and that the record contains no evidence that its allocation method is not fair or equitable. To the contrary, the record shows that Miller received an amount of vehicles equal to or exceeding the number of vehicles that its planning volume suggested that it should receive.

With respect to its allocation system, VW asserts that the evidence shows that the program was equitable. VW contends that there is evidence that it considered fair facts and that its program contained "safety valves." The safety valves prevented any harm which might have occurred as a result of a formula which rounded fractions down. These safety valves included a minimum stocking requirement and a provision which granted local area executives discretion to allocate leftover vehicles. VW also asserts that, despite the hearing officer's characterization that the Apostle Scores were used as punishment to take cars away from dealers, that the Apostle system actually operates as a bonus system that awarded dealers who met a certain score with additional vehicles.

However, DMV made four findings which support the determination that the current allocation method did not conform to, and is in violation of, the statute. Each is supported in the record by substantial evidence. The findings are (1) that the system truncated fractional allocations and did not accumulate fractional vehicles, (2) that the area executive had unfettered discretion to affect allocations, (3) that the system improperly utilized CAPP (the Apostle program) to modify allocations, and (4) that the "safety valves" were not adequate to remedy the allocation shortfalls. These are findings on which

reasonable persons could disagree. As such, they are ones on which substantial evidence exists to support them.

VW states that each finding relied upon by Miller and DMV as support for the Commissioner's findings all relate to the Commissioner's finding that the allocation method was unlawful and do not relate to the number of vehicles actually shipped to Miller by VW. Because VW contends the relevant inquiry is whether VW shipped an equitable number of vehicles to Miller, then the record must contain substantial evidence on that issue. For reasons discussed *infra*, the court does not agree that DMV was constrained to only examine the number of vehicles actually shipped.

*Scope of Authority*

VW argues that the plain language of the statute indicates that it purports to regulate the actual number of vehicles distributed. Accordingly, VW continues, DMV can only evaluate the results of an allocation program and not the program itself; therefore, the Commissioner's order exceeds the scope of authority of the statute. In other words, for example, VW contends that DMV can determine compliance with the statutes by determining whether a manufacturer shipped the appropriate number of vehicles to a dealer. If it finds the number shipped inequitable then it can order the manufacturer to ship the right number of vehicles to that dealer.

Again, a reading of the statute evinces the Legislature's intent to ensure that Virginia dealers get a fair percentage of vehicles compared nationally. It follows that, in carrying out this intent, the administrative body charged with the statute's enforcement would necessarily have to examine the allocation methodology to determine whether a Virginia dealer is getting its fair share. Indeed, the statute allows DMV to demand of the manufacturer "all records of sale and all records of distribution" of all dealers of similar vehicles.

Accordingly, DMV, in the administrative hearing, took extensive evidence on what was said to be core of VW's vehicle distribution system, a mathematical algorithm design so that a vehicle should be allocated where they were likely to be sold, based on receipt of projected sales performance. According to Miller and DMV, DMV found that the algorithm was deficient in design and operation. Considering the terms of the statute, it would be only proper to examine the methodology in question to carry out the statute's purpose and intent, which was done here.

VW also claims that the only remedies available to DMV are to declare a violation of the statute or, in some instances, to revoke the manufacturer's or distributor's license to do business in Virginia. *See* § 46.2-1503.4(6). VW

therefore argues that the DMV had no authority under the statute to (1) order the adoption of a new allocation methodology that VW must certify as been tested to insure equity, (2) prohibit allocations as incentive unless permitted under an approved franchise agreement, and (3) reserve sanctions for future violations. The only sanction available and authorized to DMV in the event of violations in the future is license revocation. The court agrees with VW.

There is nothing in the statute that permits DMV to impose the relief its order encompasses in the case. There is no grant of specific powers to impose the remedies DMV did here. The statute grants DMV the authority to declare a manufacturer in violation. There is authority to revoke a manufacturer's license to do business here. Beyond that, the relevant statutes are devoid of any express authority to issue the remedies provided here.

In support of the remedies provided, DMV and Miller rely on implicit authority from the express authority to revoke. However, DMV, like all administrative bodies, is a creature of statute and is confined to the duties the General Assembly set out in enabling legislation, deriving its power only from that which authorizes it. *See Carpenter v. Real Estate Bd.*, 20 Va. App. 100 (1995). The passage of the recent amendments by the General Assembly giving DMV authority to provide specific remedies tells the court that by implication no such remedies were available before the amendment. Thus, in this respect the court agrees with VW; DMV exceeded the authority given it by way of ordering the relief afforded in this instance.

### Conclusion

Under the standards of review, the court finds that there is a basis in the record to support the agency determination that the VW vehicle allocation system violates § 46.2-1569(7). However, the court finds that DMV exceeded its authority in the relief or remedies it imposed due to such violation. The case is therefore remanded to the agency for the purpose of modifying the remedy to be imposed consistent with law for the reasons discussed herein. Because of this resolution, there is no need to address the issue of mootness.