# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Richard Robertson et al.

v.

City of Alexandria

March 16, 1998

Case No. (Chancery) CH960416

BY JUDGE JOHN E. KLOCH

This matter came on for trial on the Complainants' Bill of Complaint and Petition for Declaratory Judgment and Other Relief seeking the right to develop certain real property consistent with the 1946 subdivision, to compel the City of Alexandria to issue a building permit allowing such development, and for such other relief as deemed appropriate.

By stipulation between the parties, the case was submitted on their respective briefs for the reason that the facts are not in dispute, and the precise legal issue to be determined by the court is agreed upon and presented to the Court in the Amended Scheduling Order made part of the record in this case.

## Facts

The complainants are the owners of a lot known as Lot 7, or 703 North Quaker Lane, which was originally created as part of a thirteen lot subdivision approved by the city in 1946. At the time the subdivision plat was approved and recorded, all thirteen of the lots complied with the then existing city zoning ordinance. In 1951, a new zoning ordinance was adopted, and Lot 7 no longer met the minimum lot size and street frontage requirements under the zoning regulations. However, a "grandfather" provision in the 1951 zoning ordinance allowed the continued development of the lot with a single family dwelling. This grandfather provision was repealed in 1974. Lot 7, which has never had a dwelling constructed on it, was acquired in 1960 by the owners of an adjacent lot and dwelling, Lot 6, at 1420 Key Drive, and utilized as a yard.

In 1987, the present owners acquired both Lots 6 and 7 from the prior common owner and promptly sold the developed lot, Lot 6, to a certain Mark Twinn. The current owners, the complainants, have subsequently attempted, without success, to obtain special use permit approval or variance approval from the city to develop Lot 7 with a single family dwelling. The City has maintained that consistent with the Zoning Ordinance, Lot 7 can be utilized only in conjunction with one of the adjacent lots, as was done between 1960 and 1987. The owners claim that they have a vested right to develop Lot 7 consistent with the original subdivision approval.

*Issue Presented*

As set forth in the Amended Scheduling Order, the sole issue for decision in this case is whether the complainants have a vested right to develop the property, Lot 7, with a single family dwelling, by virtue of a subdivision plat approved by the City on or about July 11, 1946, and recorded in the land records of the City.

*Analysis of the Vested Rights Doctrine*

The Virginia Supreme Court has definitively recognized the concept of vested zoning rights. In *Board of Supervisors v. Medical Structures, Inc.*, 213 Va. 355 (1972), the court established the following elements of a vested rights claim in Virginia, to wit: that a government entity has committed a significant official act of approval; that the use or development authorized or approved by the government has been diligently pursued; that significant expenses were incurred in good faith reliance on the approval; and that the proposed use or development is not harmful to the public health, safety, morals, or general welfare. *Ibid.*

The complainants go to great lengths detailing factually the original development of the "Howard Tract" wherein the final plat consisted of thirteen lots, of which Lot 7 is one. The complainants meticulously compare the facts relating to that development to the elements of vesting as required by the Supreme Court's ruling in *Medical Structures* and its progeny and reach the conclusion that the zoning rights were, therefore, vested in the original developer. Thus, through a series of transfers in ownership by deed, those vested rights rest with the complainants, the current owners.of Lot 7. The City, although not taking direct issue with the complainants' analysis, concentrates on the "diligently pursued" element of *Medical Structures* and argues that the rights afforded by the government approval must be continuously "diligently

pursued," and if they are not so pursued, there exists the possibility that the previously vested right could be forfeited. Finally, the City argues that based on the facts in this case, by failure of the developer and its successors in interest to pursue the development of Lot 7, the previously vested rights were forfeited or abandoned, and therefore, they are prohibited from further development in violation of current zoning ordinances.

The precise issue in this case then is, under the law and facts of this case, can previously vested zoning rights be abandoned or forfeited, and if so, were they so here?

## Reasoning

Without question, Virginia has long recognized the concept of vested rights and, in *Medical Structures*, recognized the concept of vesting of property rights in a given use. Virginia law is less clear as to whether under a factual circumstance as presents itself in this case, the life of the vested right is infinite.

In the case of *Love v. National Bank*, 205 Va. 860 (1965), the Virginia Supreme Court concluded that vested rights may be limited in certain circumstances. In that case, where mining "rights" were not exercised for a period of over thirty-five years, the Court, citing *Cooley's Const. Lim.*, 5th ed., § 448, stated:

Notwithstanding the protection which the law gives to vested rights, it is possible for a party to debar himself of the right to assert the same in the courts for his own negligence or laches. If one who is dispossessed be negligent for a long and unreasonable time, the law refuses afterwards to lend him any assistance to recover the possession merely, both to punish his neglect … . and also because it is presumed that the supposed wrongdoer has in such a length of time procured a legal title, otherwise he would sooner have been sued. Statutes of limitation are passed which fix upon a reasonable time within which a party is permitted to bring suit for the recovery of his rights and which, on failure to do so, establish a legal presumption against him that he has no rights in the premises. Such a statute is a statute of repose. Every government is under obligation to its citizens to afford them all needful legal remedies; but it is not bound to keep its courts open indefinitely for one who neglects or refuses to apply for redress until it may fairly be presumed that the means by which the other party might disprove his claim are lost in the lapse of time.

*Id.* 866.

Similarly, other jurisdictions have likewise found that the life of vested rights have a limit. In *Dwyer v. McTygue*, 519 N.Y.S. 2d 630 (N.Y. Sup. 1987), the Court was confronted with a factual similar situation as the case at bar wherein an original plat was approved for development in 1963, the regulations were changed in 1970 with a grandfather clause. Plaintiff in that case purchased the subject property and sought to develop it in 1986. The Court there, holding for the Commissioner of Saratoga Springs, stated, "[a]n approval of a subdivision, once granted, must be exercised with some dispatch. The original approval was not a blank check to be negotiated at any time at the discretion of its possessor." See also *Meilak v. Town of Coeymans*, 639 N.Y.S. 547 (N.Y. Sup. 1996).

The Virginia Attorney General has also opined that vested rights are not immutable in stating:

> The vested rights, whether in the present owner or in a subsequent purchaser, however, do not continue indefinitely but must be exercised within a reasonable period of time. While the rights of the locality to change its zoning powers can be suspended for a reasonable time to allow the diligent, good faith completion of an approved development, these rights cannot be suspended indefinitely. Absent this diligent, good faith completion of the approved development within a reasonable time, the vested rights of the owner or subsequent purchaser will be lost and the lot will become subject to the current zoning requirements.

1989 Ops. Va. A.G. 32 at 36.

Finally, the Virginia General Assembly has set public policy by establishing that an approved, recorded plat of a subdivision, such as the one upon which this vested rights claim is based, should be immune from subsequently adopted zoning ordinance changes only for a period of five years after approval. Virginia Code § 15.1-475.

## Conclusion

Nothing in the vested rights doctrine suggests or requires that a half-century old approval might give rise to a vested right to use and develop land contrary to the current zoning regulations. The absurdity and chaos that would result from such a rule is self-evident. Moreover, where, as in the case at bar,

the property has been owned and used in conjunction with an adjacent house and lot for a period of twenty-seven years, the incaution of the current owners in separating title to Lot 7 from title to the adjacent Lot 6 can hardly be described as a type of good faith reliance meriting vested rights protection. It is clear that the present owners and their predecessors in interest have failed to diligently pursue development of Lot 7 within a reasonable time and are now precluded from exercising that option.

For the foregoing reasons, I am of the opinion that there exists no vested right to develop Lot 7 with a single family dwelling, and I, therefore, find in favor of the Defendant, City of Alexandria. The Plaintiff's Bill of Complaint is dismissed.